Good morning, Richard Levy for the appellant Claudia Bastidas. This is the drug case in which Bastidas was acquitted of conspiracy. The jury found that the quantity was only the one container, not the one container plus the nine in the SUV, but convicted her of possession with intent to distribute. I'd like to first address the second issue on unanimity, the plain error aspect. First, we know that lack of unanimity can indeed be plain error. That was the recent Lapeer case, L-A-P-I-E-R, cited in the opening brief and the Every participant knew that there was a distinction between the first leg from the SUV to the informant's car and the second leg from the informant's car back toward the SUV. Why did that matter? Because there were distinct defenses, Judge Watford. For example, the jury could have believed Bastidas that she did not realize it was drugs until she was in the informant's car and headed back. In that case, they could have found her guilty based on that single trip, regardless of, and not on the first trip. Or, conversely, they could have believed willful ignorance on the first trip, that she must have known that it was drugs, but on the second trip coming back, she did not intend to distribute, she intended to abandon. So those are two scenarios, and there are others discussed in the opening brief. Was it ineffective assistance of counsel not to request the unanimity instruction? And didn't this matter arise, in terms of these two separate potentials for finding criminal liability, arise as a result of her testimony at trial, as opposed to what she said to the officers when she was The government did modify its theory between the opening statement, where it referred solely to the first and second legs as one continuum, and its opening summation, where it added the, it distinguished the two, possibly based on her testimony denying knowledge in the first case. That may well be true. On your underlying point, it is always the trial court's responsibility to correctly instruct the jury, and unanimity is required, sua sponte. But isn't unanimity required with respect to means? Because I think Garcia Rivera discusses the cases holding that the jury does not need to be unanimous about the means by which the offense was committed. Isn't that what we're talking about here? I would, I believe these are not means, but two entirely separate acts with mental, different mental states. She goes from X to Y under certain circumstances. She goes from Y to X under others. That's no different from two separate conspiracies. Well, how did she commit this possession? Because she was ultimately, she was charged with conspiracy and, and possession with intent to distribute, correct? Yes. So I guess I'm just trying to figure out and what's the best case law that you could show me that, that what we're talking about here, her possession on either one of those instances, doesn't show the means in which she possessed it. The, the, what's your best case on that? There are no specific close cases on going from X to Y or Y and back from, to X. However, all of the cases discussed in the opening brief, make clear that the Garcia Rivera case, there were no different defenses. It doesn't matter whether a jury found, uh, believed one witness that he had, I believe the firearms on one occasion or, uh, on another witness on another occasion, it was all, I guess I'm just, maybe you got to help me with the different defenses notion. Cause I don't think I even understand that. Let's just take the scenario where the jury says she knew from the time she walked from the, is it to the SUV to the car that she knew. And so she's guilty because she already knew by that point. Right. Right. Okay. Okay. So let's say half the jurors concluded that. Yeah. And then half the jurors concluded, well, she didn't know at that point, but she certainly knew by the time she got back. Right. And you're saying there's some defense that your client raised as to that part. And presumably those six jurors who found her guilty because of that rejected that Okay. Yeah. The reason, the reason is the, the return trip jurors or the ones who rejected the return trip could have accepted the defense argument that there was not possession with intent to distribute because she just wanted to abandon the stuff on the pavement, drive off with her kids and leave. Right. But on the, I'm sorry, go ahead. On the, on the first trip, the jurors could have believed either of two things. One that she knew when she opened the trunk and she saw the containers and knowingly carried them to the informant or more ignorant and the government made a heavy emphasis on willful ignorance and the court instructed on willful blindness, willful ignorance. So if she was willfully ignorant, she should have known, but she was hiding her head in the sand. Then when they started discussing it in the informant's car, she realized, okay, I can't hide from the truth anymore. Just like I can't hide from my husband's infidelity anymore. It's right here. Then she can decide, okay, I'm possessing it now on the way back, but not for the purpose of distribution for the purpose as in the Seventh Circuit Piado case. I'm just, I just want to get rid of it, walk off. So those are two distinct mental state defenses. I don't think so because even if she was willfully, is it can't be very ignorant or blind going there. The jury had to find that she was possessing whatever she had with this, with the requisite mental state, with the intent to distribute it. So that doesn't disappear by the time she's coming back. With willfully, willfully blind, knowing that if she takes her head out of the sand, she is in fact participating in a drug deal that is enough for a leg. Whereas if she is not, whereas once she has to take her head out of the sand, then she makes her decision. No, I'm not going to go through with that. Can I ask you about the sentencing issue? Cause I frankly just don't find your argument on this point persuasive. I don't even think even if we were reviewing this de novo, I don't think it, I don't even think your point is right, let alone that it's plain air, but, but on the sentencing issue I guess I am troubled somewhat, um, by what the district court did here. And so maybe you can just walk us through, um, why you think the court erred by not, and I guess we're talking about the safety valve, right? Keeping in mind the Shrepa, the lead case, the Shrepa S H R E S T H A case, the court specifically relied on the, um, testimony at trial as perjurious and therefore denied the safety valve on that basis. The court said, uh, ER 23, the court's finding that the safety valve requirement has not been satisfied because as the government argues, the defendant was not truthful with the government and was not truthful at trial. So he offered two basis, he's there. I understand that he specifically referred to the perjury, which are, you know, not truthful at trial, which he's not supposed to do, correct? Right. But that wasn't his single basis. It was also that he was not truthful to the government. So what do we do? Because I'm focusing in on that. And what do we do when he did offer a basis that he is allowed to rely on and that's whether she was truthful to the government. Um, and as we know in safety valve, I mean, there's just a wide range of discretion given, not just to the district court, but to the government on whether or not someone is eligible or can get it. A lot of it's just based on cooperation in the government's view of whether or not she was truthful. There were two proffers to the government. If we're stripping away the trial, the immediately after the arrest, when she was Miran dies and after trial, a pre-sentence proffer, she was under the court's premise. She was truthful to the government in the post arrest. That's, that's, let me stop you right there because I think if you were right about that, you might well prevail. But I guess I read the district court is saying she wasn't even truthful in the post arrest statement because she was only willing to acknowledge that she knew at the point where I guess they opened the back of the SUV or whatever it was. Um, whereas I tell me if I'm wrong, that the district court had the view that she knew long before they ever got to the parking lot and she never owned up to that ever, not in the post arrest statement, not at trial, not post conviction. So am I wrong in reading the record that way? The district court did have a suspicion that she knew all along, notwithstanding the jury verdict, which is perfectly acceptable, but it made it safety valve determination on the much narrower issue of the discrepancy between the post arrest and, and the rest. But Judge McGeeh pointed out, just as you recited the district court's finding that there were these two bases. The first one was that your client wasn't truthful to the government ever. And I thought you just acknowledged that if that were, um, that the district court was entitled to conclude on this record that your client did know even before she got to the back of the SUV and open it. So why can't the district court under a clear error standard say, I'm finding that you knew much more than you've ever admitted in any of these? Because on, on the record, the district court did not rely. It had its suspicions, but it did not rely on its, its, uh, suspicion that, um, uh, that she knew all along. And that's discussed in the AOB at 84 to 86. Um, show me where in the transcript you're talking about or point me to the right place. This would be again at ER, uh, 23. Um, the government, I'm looking for this specific site on, uh, the dispute. It has to be viewed in the context of the dispute between the her single statement, uh, why, whether she knew at the time she opened the trunk, uh, the, the defense said to the court during the sentencing hearing, if you think that I did not advise Ms. Bastidas about the significance of that statement and, and about her need to consider that when she does her I don't have the exact page site, but it jumps out at you. Everyone knew that this was, uh, the specific fact that the court was relying on. If the court was relying on, uh, overall, not believing a word Bastidas said, uh, I don't think that's in the record, but the remedy as a case I cite on page 86 of the opening is, is to remand, uh, for, for clarification. But let's say, I mean, you said the district court saying he's relying on her first, um, debriefing where she said, I knew it was drugs right away. Well, at that time, not as part of the conspiracy. Yes. At the time when I opened the, yes, not, not until I got into the car, but at the time I went and pulled it and put it in my purse. Is that what she said at the first? Yes. Okay. That's what the translator said. She said yes. And then at trial, she changes that. Is that correct? Yes. And says, oh no, the first time that I knew about this was when after I got this package of Tupperware, put it in my purse and went to the car and then I knew, is that correct? Yes. All right. So the government and then the district court really focused on that inconsistency as supporting why she wasn't truthful, which is what she's, you know, it needs to be a requirement that she be truthful for her to get the safety valve, right? They're really focused on that. So I guess why, um, isn't that enough? To deny the safety valve? Right. Because she did under the court's premise that she lied at trial, then she must have been truthful in the post arrest proffer on that statement, limiting ourselves to that statement. Uh, it's either one or the other. She was lying then or she was lying at trial. So if she was telling the truth in the, in the post arrest statement, then she provided the government the information. And as the Shretha case says, even if you recant, even if you recant at trial, even if you recant, uh, post at the, uh, pre sentencing, you still provided the information. The safety valve has to apply. The recantation is irrelevant because this is not an acceptance of responsibility. But the difference there is that the lawyer made that argument to the district court at the time of sentencing. And so the burden is on your client to, to make their case. And she didn't do that here. Did she? I mean, uh, she didn't say, Hey judge. So I'm just wondering, the judge was supposed to figure that out on its own and say, okay, it's just inconsistency, um, between what she said initially and later at trial. Um, but I guess since she wasn't, since I think she was not telling the truth at trial, she was probably telling the truth before and therefore I'm going to give her the safety valve. I don't know. That's, I mean, it's Shretha that, that I guess it was Shretha, wasn't it? That that's where that argument was made. And it seems like, uh, that's more forthcoming, uh, than what happened here. We're missing that element of it. And I just don't know. And by, by my asking the question, I'm not quite sure, but I just wondered, doesn't that make a difference? I would point to ER 17, the passage I was alluding to earlier when a council says, um, I have just one final thing to say, if it was true that Bastidas had said that, um, she would have pled guilty. She would have had safety valve proffered and she would never have gone to trial. Here she is. So council is overtly raising the discrepancy on this one sentence. I talked to Bastidas. She's saying, um, if I, if you can be sure I talked to her and explained everything, if she had said at trial, consistent, consistent with her, uh, uh, post arrest proffer, we would not be here. We would have pleaded guilty. So that explicitly raises the question. She told one story, then told another version at trial or else the translator was mistaken. There's a lot of evidence of that. It's gotta be one or the other. She was truthful at the one or she was district court says she was committed perjury on that point at trial. So she must have been truthful, uh, in the post arrest proffer. And, uh, the fact that she wasn't truthful at some point, what really matters? No, that's the key of, of, of the Shretha case. It is quote irrelevant that she, that the defendant recanted as long as he provided the information at some point he could recant and it doesn't matter because it is not a reward for accepting responsibility and being honest. It's solely for providing information if you meet the other criteria. And once you've provided that information, you cannot unring the bell. Um, I know I'm way over and I would, I would just ask, um, understanding what I've heard today on the unanimity, the lesser included offense issue raises a different issue. Um, thank you. Thank you. Good morning, your honors. I guess. Uh, good afternoon, your honors. And may it please the court, Alexander Schwab on behalf of the United States. This case is a textbook example of why the plain error review standard exists. Maybe we could just jump straight to sentencing. That's where I plan to start your honor. Okay. You think plain error governs that the sentencing? Absolutely. Your honor.  I agree with some of the issues raised. Uh, and that's because when taken in context, any observer in that courtroom would have been crystal clear that the district court was not relying upon the defendant's statement at trial as a basis for denying safety valve relief. However, I, the judge stressed that a couple of points that the fact that she had, in his view, perjured herself at trial was, so there's, there's a couple of interrelated issues here. Uh, a number of the citations that the defense raises in terms of the record are citations before the issue of safety valve seem even being discussed, but rather whether an enhancement should apply to the defendant because of her statement at trial, whether this should be considered under 3553 a as a basis for giving her a more severe sentence because she got up for the court and was untruthful. That's it's not entirely separate, excuse me, because the safety valve says you're not supposed to consider perjury. Well, apparently either, I guess the government was seeking an obstruction based on what, how she testified at trial, correct? Yes, John. All right. So an obstruction is usually because of something like perjury. So even though that was discussed before, unless there's somewhere in the case law, I didn't see it that says that, oh, if you to refer to perjury when you're considering the safety valve, is there such a case? No, Your Honor, but that's not what was happening here. So first off, I just suggest that the court not look to any record citation before ER 16 because nothing before then deals at all with the safety valve. Safety valve comes up on ER 16 and what the court says is it correctly enunciates what the fifth factor of the safety valve is. The court says, well, the major issues, the mandatory minimum, the only way that she can escape the mandatory minimum is through the safety valve. And the government argues, I think with substance, that one of the elements of the safety valve eligibility is that she was candid with the government and the government maintains that she wasn't. And you maintain that she wasn't because you think the first statement she made right after her arrest is the truthful one and she wouldn't own up to that either at trial or in the post-conviction proffer? No, Your Honor. And in fact, the court in ER 643 expressly stated that it disagreed that the post-arrest statement was, in fact, wholly truthful. It was more truthful in as much as it admitted an earlier degree of knowledge than both the trial testimony and the basically congruent post-conviction proffer, but it wasn't itself totally truthful as is required by the safety valve. In fact, that's what the district court... Where did the district court rely on that notion? Because I couldn't find it just skimming through the transcript. Rely on the notion that the post-arrest statement was also untruthful, Your Honor? Right. So, for example... It's got to be after ER 16, so show me where after ER 16 the judge said that. The judge doesn't. And here's the thing... That's what I'm saying. So what the judge does say is, you know, what you said at trial wasn't true. That's what I... Okay, I cut you off, but show me where after ER 16 the judge says what you argued in your sentencing memorandum. Well, here's the thing, Your Honor. At that point, the defense is arguing overtly that the post-arrest statement was not true. That what was being represented as the post-arrest statement, that that was not true. That the truth was what the defendant testified at trial and testified in the post-conviction proffer. So you have, at that point, both the defense and the prosecution overtly rejecting the post-arrest proffer as a sufficient basis for the safety valve. And so the idea that the district court was supposed to... Hang on a second. Let's say that the entire scope of the defendant's knowledge of what was going on is truthfully reflected in the post-arrest statement. All right? Take that as a given. If that's true, the fact that she then says something different at trial, do you agree as a legal matter that that's not a basis for the district court to say she's ineligible for the safety valve? That, without anything more, would not, under this court's precedence, be enough to ipso facto deny safety valve relief? Okay. So, so what you need to show us then, it seems to me, is that the district court was not operating under the state of facts that I just gave you, but rather was, had adopted the state of facts that you say you argued in your sentencing memorandum. That, in other words, even the post-arrest statement itself was false because she knew even more than what she was willing to admit there, right? I disagree that that's the government's burden at this point. First exclusive scenarios, one of which you have admitted you lose under, and the other of which you are claiming you win under, and you're saying that you can't show me where in the transcript the latter one is. No, Your Honor. If the defense had remained silent, or if the defense had overtly argued at the sentencing hearing that the post-arrest interview was the safety valve proffer, and that Ms. Vestitis didn't have to meet with the government again to satisfy the defense's burden under the safety valve prong, that would be, then, the district court's obligation. The defendant's last statement has to be the truthful one in order to be eligible for the safety valve? The defendant's representation during the sentencing, the proffer to the court, as to what the statement is. Okay, so maybe I need to look at our case law. I thought our case law was clear that if at any point prior to sentencing the defendant came clean, disclosed all she knew, that it didn't matter that later in the, later in time, or earlier in time, that the defendant had disclaimed the full scope of that knowledge. As long as at some point in the process the defendant came clean. I disagree with that characterization of the case law. The case law indicates that the defendant is not required to once again proffer, to basically rehabilitate the initial post-arrest statement that was deemed by the district courts to be truthful. However, that's not what happened here. You have the defendant overtly disavowing that statement, and now there's an expectation that not only, that the district court is not only supposed to reject the government's view, it's also supposed to reject the defense's view of this, and that it's somehow clearly erroneous for the district court not to have done so all along the way. And there's, and there is no case on point. In fact, the defense concedes as much in its opening brief. There is no case whatsoever that suggests that in this scenario, where the defense is overtly disavowing a particular statement of the defendant, that it's the district court's obligation to consider that as a basis for the safety valve proffering. Two questions. One, what's your best authority to support what you just said right now? What case? Well, here's the thing, Your Honor. There isn't a case on point, and given that it's plain error review, that should be sufficient. But, sorry. Second, what's your basis? I guess I'd like to know, because it's not clear to me now, why Ms. Bastidas was not safety valve. So, the government argued against the safety valve sort of on two grounds. First off, rejected, rejecting altogether the claim by the defendant that she did not know before she arrived in the Montebello parking lot that day that she was involved in a drug deal. In fact, the government's position all along, and continues to be, that she was a co-conspirator and a knowing member of the conspiracy heading into the overall drug deal. And that's a position laid out in the sentencing position. And does it matter that she was acquitted of the conspiracy? No, Your Honor. Certainly not. Ultimately, the safety valve is a sentencing provision, and the standard that governs it is not proof beyond a reasonable doubt that the defendant was not truthful at that point. And obviously, acquitted conduct in sentencing context can be raised in those situations as well. And in fact, and I think this goes back to address one of Judge Watford's questions earlier, is certainly you don't have in the context of the safety valve analysis a rejection of the truthfulness of the post-arrest statement. But you do have a factual finding by the court rejecting the truthfulness and the candor of that statement. And you have that at ER 10, where... I thought you said we couldn't look at anything before ER 16. No, what I was saying, Your Honor, is that in terms of that analysis, that analysis goes to the underlying truthfulness of what she was saying at trial. Now, there are factual findings and there are legal conclusions. And what I'm arguing to you now is that a factual finding was made that precludes what the defense is arguing for now. Should we be suggesting to the district courts a simple analysis where they consider, the district judge considers, each statement made by the defendant to law enforcement and make a determination? So if a determination is made that the post-arrest proffer was truthful, she'd be safety valve eligible? In other words, does it matter that she later changes her story? Again, it sort of depends on the context. And... Well, in this context, should we have asked... If this matter went back to the district court, would we be asking the district court to make a determination whether she was truthful when she made the first statement, the post-arrest statement? The court would have to make that determination if it were remanded at that point, because there's certainly nothing in the record that supports the claim on its own that the post-arrest statement was sufficient to satisfy the safety valve. Basically, there's a claim here that the court committed clear error in its finding that both the post-conviction proffer and, in fact, the post-arrest statement were not completely candid. But not only clear error, clear error that would have required the district courts to reject both parties' analysis of the truthfulness of the underlying statements. So what we have here is a situation where the court is required to reject overtly what the defense is arguing at sentencing and accept a completely separate defense statement. What Shrestha supports as a proposition is the idea that the defendant doesn't have to go and give an additional statement. It can rely upon a previous statement given, even if it's a post-arrest statement. But there was not that kind of reliance here. Here, there was an overt rejection of the validity of the post-arrest statement. If Ms. Bastidas had refused to make a post- conviction proffer and at sentencing and in the sentencing paper said, no, she testified one way at trial, but there was the statement that was made to the police, we submit that this is a complete and candid recitation of her knowledge of the offense, all information and evidence was provided, then that would have been before the court and the court could have considered it. As it happens, the record seems to suggest the court would have rejected that as well, because the court described that explanation as itself suspect, but it would at least been before the court in a way that it's not here. Here, the defense overtly rejected that. I guess you didn't finish to tell me what your theory, why you rejected the safety valve, why you argued against it. You gave me the first reason. Was there a second reason? So the second reason is that in terms of simply persuading the court, since we're going in cold as to what the court's knowing, the easiest way to demonstrate that the post-conviction proffer was false is that it was inconsistent with the post-arrest statement. I guess I read, maybe I'm reading too much into Judge Murguia's question, and I'm sorry to interrupt, but I guess my question is why do you think she should serve five years even for this? Why were you fighting the safety valve? That to me is what's bothered, as soon as I got through reviewing the case, I just questioned your judgment, frankly, as a prosecutor, as to why were you thinking that five years for this woman's involvement in this particular crime was a just sentence? And I don't, I guess I don't even understand why you're fighting so vigorously now to defend, you know, a remand so that she could potentially be eligible. I just, well, I mean do you know more about this defendant than what's I read everything at the sentencing, pre-sentence report and the like, and I just think this this makes no sense. I don't even know why you charged her, frankly, but even if you're gonna charge her, why you were so adamant that she had to do at least the five years? I just don't get it. To be honest, Your Honor, two responses. First off, it's not our determination that she must serve five years as a sentence. It's Congress's determination. No. Congress provided a lot of discretion here, counsel. So yeah, Congress gives you that opportunity to use your discretion on the safety valve. That's the whole thing about the safety valve, counsel, is that you're given a lot of discretion as a prosecutor on how to exercise it. It's not mandated. This is not like a mandatory minimum, but let's just say you have your reasons. I don't know, but I'm curious here. It does, there is a lot of questions raised because it seems like, at least from the record that you all have given us, that her husband is substantially more culpable and he got a safety, he got a safety valve eligibility. I think he's serving only three more years than she is. It's, it's interesting that you would, so at sentencing, and that's why I'm trying to figure out why you were, what your position was as to why you were arguing against the safety valve, when it appears that at various points here, and maybe she was inconsistent, she ultimately, she did cooperate with you. And it seems like another purpose of the safety valve is that you as, you know, prosecutor would want people to encourage that. And I understand it's, you have a lot of discretion on whether, you know, what to argue, what they deserve, but in terms of this scenario and others that may come later, that you'd want people to be more forthcoming and not less. And here I just, I'm just curious as to why the aggressive sort of nature of fighting so against the safety valve, considering her role, or what appears to be her role from the record. Again, you may know more, but we're looking at it just from what we have here. And the fact that she, you know, did make statements right away and seems like you'd want to encourage that. Honestly, Your Honor, if the defendant had pleaded guilty and she had come in and proffered honestly as to her knowledge, the government would have been more than happy to recommend that she receive safety valve. Unfortunately, this is a mandatory minimum offense and there is a narrow exception. And the defendant opted not to take advantage of that exception. So you'd rather she had pled straight up and that not said a word. And not said a word to you. And just then, you know, she'd have better chances at a safety valve. Is that what you are encouraging? She certainly would have had better chances at safety valve relief. But again, safety valve is not about cooperation. This court, the statute itself, very clearly recognized that the point of safety valve is providing narrow exception for certain low level offenders. If they can come forward and be honest and truthful. They can do it in the post arrest statement phase. They can do it after trial. They can do it before trial. Unfortunately, here, none of those three statements was in fact honest. The district court indicated that it rejected all three of those. In fact, Where did the district court reject the first statement? ER 10, Your Honor, where the district court describes the story given in the post arrest statement even as somewhat suspect. The idea that this defendant is sitting in a car in a foreign country, going from house to house, waiting for her husband to meet strange men, go into another house, come back with a box, go to a parking lot, meet another strange woman. All along the way, she's claiming that she's not asking any questions whatsoever. This is suspect. And this is, you're relating that to the first statement? I'm sorry. You're relating that to the first post arrest statement? Yes, Your Honor. That basically she's claiming she has zero knowledge whatsoever what's going on until she opens up the cardboard box and sees 10 Tupperware containers that are transparent through which she sees the methamphetamine and at that point wants to just get the drug deal done. But even is asking is that you provide her safety valve relief, that you remand to the court, give her a chance to reclaim a statement that she overtly disclaimed and have a finding of clear error, essentially, that rejecting the original statements. And we had in the previous argument a claim that the record is too equivocal to know without having to remand. Well, that's the point of plain error review. If this objection had been brought to the court's attention in the original sensing, the court could have made clear exactly what it was finding with respect to that first statement. The defense didn't bring that objection and it denied the court the opportunity to clarify whether it was overtly making a finding, rejecting the credibility of that post arrest statement or not. And the fact that now she can sandbag the government and the district court by waiting until appeal to raise this argument and rely on a completely different statement, that's exactly what plain error is meant to deter. I guess, I mean, maybe this is another form of asking the same question that I've already asked her that Judge Wadford has asked. But what, I guess, what does it matter or what difference is there ultimately when you're reviewing for safety valve if she was slightly inconsistent or inconsistent, I guess, about when she realized there were drugs in the Tupperware? Because that's really ultimately what we have in front of us right now. That is what you are zeroing in on, you know, that she did not, she was not truthful about when she actually, but at points here during this investigation or I guess subsequent to the arrest, she admitted to having it at both times. So why does it matter? So I just want to be clear. Just answer my question. What it matters is, is that we're talking not in terms of individual cases, but in terms of precedence. And the whole point of the safety valve proffer is to give relief to certain types of offenders who are honest. And if an offender can overtly disclaim a particular statement, say, I never said that. But I said, but ultimately, but here you have both statements. I mean, you can point to either one where she admits that she had it. Pick one. I mean, that's I guess that's what I'm getting at. I'm trying to figure out why does it matter which one at this point after you're all done and over with and it's all safety valve. Why does it matter? I mean, if your honor is asking, is this a major case? No, at the end of the day, this isn't the biggest case the office has ever brought. And if you remand for defendants saying, I suspect that we'll have more robust factual findings given the guidance of this court's opinion, and that we'll end up in a roughly similar position. But at the end of the day, we're asking not what we should do with individual cases, but what the law is that applies. And the fact of the matter is that the safety valve exists to reward people who are honest. This defendant had the opportunity to be honest. Even if you believe that the post arrest statement was in fact an honest and complete recitation of her information and evidence relevant to the offense, then the fact that she overtly disclaimed that statement and persisted in disclaiming that statement all the way up until the point in which she realized on appeal, now she's better served making a different argument. That demonstrates she's not accepting responsibility in the way the safety valve prong is supposed to allow defendants to do. She's not really making, I mean, she's just saying, she's not saying herself, I don't think. I mean, we're drawing certain, I guess, arguments based on the cases that have been presented. One of them is Shrestha. It seems very similar, not quite exactly to what happened here, but very similar. It seems like the lawyer in Shrestha was made a slightly different argument than the lawyer here. And so, I don't know, I mean, I think you're attributing too much in terms of what she's trying to do and you already are very skeptical of her, of her honesty. I just, ultimately, at the end of the day, especially when you look at all the totality of the facts surrounding her in this case, at least from what's provided in the record, you can point to either one of these cases, either one of those, the post arrest or later, she admits to not insignificant, even under a safety valve evaluation. But we've taken you well, just end by saying that at the point at which the government contested the validity, the veracity of the statement, it was the defendant's burden at that point to establish that she had been honest. She relied not on the post arrest statement, but a completely different statement. She cannot have met that burden. And so I ask that you affirm. Very brief time. I don't know if you had much left. I'm sticking only to the safety valve issue. First, it's not a question of clear factual error. It's a de novo question, an error of law. The judge relied wholly or in part on trial testimony. Second, the passage I was on the statement, was it when she went to the trunk or in the informant's car, not whether she was a member of the conspiracy, ER 16 to 17, and you gave her a good defense, says the court, but she made a terrible mistake by lying. And it wasn't about an insignificant matter. Now she had been lying about everything when in fact, she was a co-conspirator for 10 pounds of methamphetamine. The court would not have phrased this as an insignificant, it wasn't an insignificant matter. I think that indicates, I mean, it would obviously be a great matter of great importance. I think this indicates that the court was zeroing in on that one statement, although it had its suspicions. Thank you very much. Thank you very much. Thank you both for your arguments here today. Thank you for taking all the questions of both of you on this really interesting case and interesting issue that's presented here. We appreciate it. We are, the case is now submitted. We are now in recess until tomorrow morning. Thank you.
judges: Murguia, Watford, Vanaskie